763 A.2d 330 (2000)
STATE of New Jersey, Plaintiff-Appellant,
v.
Daniel HICKMAN, Jr., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 17, 2000.
Decided December 26, 2000.
*333 Andrew N. Yurick, Gloucester County Prosecutor, for appellant (Joseph H. Enos, Jr., Assistant Prosecutor, of counsel and on the brief).
Ivelisse Torres, Public Defender, for respondent (Lon Taylor, Assistant Deputy Public Defender, of counsel and on the brief).
Before Judges SKILLMAN, CONLEY and WECKER. *331
*332 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
This appeal involves the scope of questions a police officer may ask an occupant of a car that is stopped for a motor vehicle violation.
Defendant was indicted for possession of cocaine, in violation of N.J.S.A. 2C:35-10a(1). Defendant moved to suppress the evidence against him, and after an evidentiary hearing, the trial court granted the motion. We subsequently granted the State's motion for leave to appeal the suppression order, and now reverse.
Shortly after midnight on January 7, 1999, defendant was a passenger in a car being operated by an unlicensed driver in the Borough of Westville in Gloucester County. When a West Deptford police officer informed Officer Richard Thomas of the Westfield Police Department that the driver's license was revoked, Thomas stopped the car and asked the driver for his credentials. The driver handed Thomas a driver's license, but a computer check confirmed that the license was revoked. In addition, the driver was unable to produce any registration or other evidence of ownership of the car. At this point, Officer Thomas asked defendant and another passenger whether they had driver's licenses, and they both said no. According to Thomas, when defendant responded to this question, he appeared to be extremely nervous, as evidenced by his "[r]efus[al] to make eye contact," and "shifting his weight from one side to the other." The officer told defendant he looked "really nervous," and asked, "have you got something on you that you should surrender right now? Any contraband, weapons, anything like that[?]" Defendant responded, "yes, I have something in my shoe[,]" and removed a small bag of rock cocaine from his right shoe. Thomas testified that only a few minutes elapsed between the time he stopped the car and defendant revealed the cocaine.
In granting defendant's motion to suppress evidence of the cocaine he had produced from his shoe, the trial court stated:
I see this as ... a compulsory question requiring and demanding a compulsory answer[.] ... You have contraband on you, you shouldn't have, which basically says give it to me.
Under a Fourth Amendment standard,... [w]here is the reasonable articulable suspicion under those circumstances?
On the other hand, if we're looking at it on a Fifth Amendment basis, clearly this is a coercive question in a ... coercive environment in which the officer is basically compelling and demanding information in which this defendant knew he had no reason to believe that he *334 was free to get out of that car and walk away.
....
... [T]wo things are clear to me in this situation. No person under these circumstances would have believed ... that he or she was free to leave....
... [T]he other flip side of that, ... I don't find that there was a reasonable, articulable suspicion that an officer should have had just because of a nervous condition that the defendant ... had contraband on him.
....
... [F]ield inquiry means being more gentle. I have some things I'd like to ask you and you don't have to answer these questions, or some variation on such a theme. But the defendant really wasn't given a choice under these circumstances. And that's why I found the environment, as well as the question, coercive....
The trial court's opinion does not clearly indicate whether the court conceived that the question Officer Thomas asked defendant violated the Fifth Amendment, the Fourth Amendment, the Due Process Clause of the Fourteenth Amendment, or all three constitutional provisions. In any event, in defending the order granting his motion to suppress, defendant argues that Officer Thomas' question violated the Fifth Amendment privilege against self-incrimination because it was not preceded by the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Due Process Clause of the Fourteenth Amendment because defendant's response was "[in]voluntary under the totality of the circumstances," and the Fourth Amendment because Thomas did not have a reasonable basis for suspicion that defendant was involved in unlawful activity.
We conclude that the brief questioning of defendant after a valid stop of the car in which he was riding did not violate any of the constitutional provisions relied upon by defendant. The arguments that Officer Thomas was required to give Miranda warnings before questioning defendant and that defendant's admission that he was in possession of cocaine was involuntary, are clearly without merit. However, we discuss these points briefly before considering defendant's Fourth Amendment argument.

I
In Berkemer v. McCarty, 468 U.S. 420, 435-42, 104 S.Ct. 3138, 3147-52, 82 L.Ed.2d 317, 331-36 (1984), the Supreme Court held that roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute "custodial interrogation" that must be preceded by Miranda warnings. The Court recognized that "a traffic stop significantly curtails the `freedom of action' of the driver and the passengers." Id. at 436, 104 S.Ct. at 3148, 82 L.Ed.2d at 332. Nevertheless, the Court concluded that a traffic stop does not "exert[ ] upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." Id. at 437, 104 S.Ct. at 3149, 82 L.Ed.2d at 333.
In reaching this conclusion, the Court pointed to "[t]wo features of an ordinary traffic stop [that] mitigate the danger that a person questioned will be induced `to speak where he would not otherwise do so freely.'" Ibid. (quoting Miranda, supra, 384 U.S. at 467, 86 S.Ct. at 1602, 16 L.Ed.2d at 694). First, "a traffic stop is presumptively temporary and brief" and thus "questioning incident to an ordinary traffic stop is quite different from stationhouse interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek." Id. at 437-38, 104 S.Ct. at 3149, 82 L.Ed.2d at 333. Second, "the typical traffic stop is public, at least to some degree," which "reduces the ability of an unscrupulous policeman to use illegitimate *335 means to elicit self-incriminating statements and diminishes the motorist's fear that, if he does not cooperate, he will be subjected to abuse." Id. at 438, 104 S.Ct. at 3149, 82 L.Ed.2d at 334.
The Court in Berkemer also analogized the "usual traffic stop" to a "Terry stop":
In both of these respects, the usual traffic stop is more analogous to a so-called "Terry stop," see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), than to a formal arrest. Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion." United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).... The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not "in custody" for the purposes of Miranda. [Id. at 439-40, 104 S.Ct. at 3150, 82 L.Ed.2d at 334-35.]
Roadside questioning of a motorist is not transformed into "custodial interrogation" that must be preceded by Miranda warnings simply because a police officer's questioning is accusatory in nature or designed to elicit incriminating evidence. Thus, in Berkemer, the Court held that a police officer was not required to give Miranda warnings to a suspected drunk driver before asking him whether "he had been using intoxicants[.]" Id. at 423, 104 S.Ct. at 3141, 82 L.Ed.2d at 324. Similarly, in State v. Toro, 229 N.J.Super. 215, 551 A.2d 170 (App.Div.1988), certif. denied, 118 N.J. 216, 570 A.2d 973 (1989), we held that police officers who observed a package at the foot of a driver stopped for a motor vehicle offense, which they suspected was a container for drugs, could ask what was in the package without giving Miranda warnings. Although the police officers in Toro ordered the driver out of the car and frisked him for weapons before questioning him, we concluded that the questioning was not "custodial":
Defendant was not told that he was under arrest, he was not handcuffed and he was not subjected to any search beyond a patdown for weapons. Furthermore, defendant was detained only briefly before he was asked about the contents of the package, and the police questioning consisted of only a few, noncoercive questions. "Treatment of this sort cannot fairly be characterized as the functional equivalent of formal arrest." Berkemer v. McCarty, supra, 468 U.S. at 442, 104 S.Ct. at 3152[, 82 L.Ed. at 336].... Rather, the officer's actions from the time they observed the suspicious package until defendant revealed that it contained cocaine constituted a Terry "stop and inquiry" in order to "obtain information confirming or dispelling the officer's suspicions." Berkemer v. McCarty, supra, 468 U.S. at 439, 104 S.Ct. at 3150[, 82 L.Ed.2d at 334].

[Id. at 221, 551 A.2d 170.]
It is even clearer in this case than it was in Toro that defendant was not subject to "custodial" interrogation. When Officer Thomas questioned defendant, the car in which he was riding had been stopped for only a few minutes, defendant was still sitting in the car and was not restrained in any way, and Thomas did not indicate that either the car or the occupants would be detained beyond the brief period required to issue the driver a summons for driving with a suspended license and determine ownership of the car. Moreover, although Thomas told defendant that he looked "really nervous" and asked whether he had any contraband, a reasonable innocent person in defendant's *336 position would not have perceived simply from this inquiry that he would be detained beyond the time required to complete the motor vehicle stop. Therefore, Officer Thomas was not required to give defendant Miranda warnings.

II
We next consider whether defendant's statement to Officer Thomas was involuntary and thus obtained in violation of the Due Process Clause.
"[C]ertain interrogation techniques... are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment."[1]Miller v. Fenton, 474 U.S. 104, 109, 106 S.Ct. 445, 449, 88 L.Ed.2d 405, 410 (1985). However, it is only questioning that involves police "overreaching," Connelly, supra, 479 U.S. at 163, 107 S.Ct. at 520, 93 L.Ed.2d at 482, or "misconduct," State v. Timmendequas, 161 N.J. 515, 613, 737 A.2d 55 (1999), which will be found to violate the Due Process Clause. For example, a confession extracted by a credible threat of physical violence is considered involuntary and thus violative of due process. Arizona v. Fulminante, 499 U.S. 279, 286-87, 111 S.Ct. 1246, 1252-53, 113 L.Ed.2d 302, 315-16 (1991). However, because of "the acknowledged need for police questioning as a tool for the effective enforcement of criminal laws," Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854, 861 (1973), the Due Process Clause only bars such extreme forms of police questioning.
Applying these principles, the Supreme Court of the United States has held that police questioning which included a false representation to a suspect that a confederate had confessed did not violate the Due Process Clause. Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 1424-25, 22 L.Ed.2d 684, 693 (1969). Similarly, in State v. Miller, 76 N.J. 392, 403-05, 388 A.2d 218 (1978), our Supreme Court held that a confession obtained by an investigator who told a murder suspect that he was his friend and wanted to help him, and that whoever committed the crime was not a criminal who should be punished but a person who needed medical treatment, did not violate the defendant's due process rights. The Court observed that the "[u]se of a psychiatrically-oriented technique is not improper merely because it causes a suspect to change his mind and confess." Id. at 405, 388 A.2d 218; see also State v. Roach, 146 N.J. 208, 226-27, 680 A.2d 634, cert. denied, 519 U.S. 1021, 117 S.Ct. 540, 136 L.Ed.2d 424 (1996).
The few brief questions that Officer Thomas asked defendant before he revealed the cocaine in his shoe did not involve any coercion beyond that inherent in any police questioning of a citizen. When defendant was asked these questions, he was not in a hostile or intimidating atmosphere. He was simply sitting in a car which had been stopped for a motor vehicle violation. Most significantly, Officer Thomas did not subject defendant to any physical or mental abuse, and his questioning was exceedingly brief. Therefore, this case does not present any serious question as to the voluntariness of defendant's response.

III
Finally, we consider whether the stop of the car in which defendant was riding and the questioning of defendant violated the Fourth Amendment or Article I, paragraph 7 of the New Jersey Constitution.
"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a `seizure' of `persons' within the meaning of the [Fourth Amendment]." State v. Dickey, 152 N.J. 468, 475, 706 A.2d 180 (1998) (quoting Whren v. United States, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89, 95 (1996)). Therefore, any automobile stop, however brief, must satisfy *337 the Fourth Amendment's basic requirement of "reasonableness." Ibid. "As a general rule," this requirement may be met by showing that "`the police [had] probable cause to believe that a traffic violation has occurred[,]'" ibid. (quoting Whren, supra, 517 U.S. at 810, 116 S.Ct. at 1772, 135 L.Ed.2d at 95-96), and that "the stop last[ed] no longer than [was] necessary to effectuate [its] purpose." Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229, 238 (1983); see Dickey, supra, 152 N.J. at 475-83, 706 A.2d 180.
When there are passengers in a car stopped for a traffic violation, the passengers are subject, as a practical matter, to the same temporary stop as the driver, because passengers do not generally have readily available alternative means of transportation. See Maryland v. Wilson, 519 U.S. 408, 413-14, 117 S.Ct. 882, 886, 137 L.Ed.2d 41, 47 (1997) ("[A]s a practical matter, [in a motor vehicle stop] the passengers are already stopped by virtue of the stop of the vehicle."); Berkemer, supra, 468 U.S. at 436, 104 S.Ct. at 3148, 82 L.Ed.2d at 332 ("[A] traffic stop significantly curtails the `freedom of action' of the driver and the passengers, if any, of the detained vehicle."); see also State v. Smith, 134 N.J. 599, 611-19, 637 A.2d 158 (1994); Dickey, supra, 152 N.J. at 483, 706 A.2d 180. Moreover, if a stop for a motor vehicle violation is reasonable, the police do not have to show an independent basis for detaining the passengers, unless the detention goes beyond what is incident to a brief motor vehicle stop. See State v. Harris, 206 Wis.2d 243, 557 N.W.2d 245, 252 (1996)("Once the State establishes that the police acted lawfully in stopping the vehicle..., the stop will be lawful as to anyone in the vehicle."); People v. Bell, 43 Cal. App.4th 754, 51 Cal.Rptr.2d 115, 119 (1996) ("If ... the detention is permissible as to the driverfor example, if it is based on reasonable suspicion that the driver has violated the Vehicle Codethen the detention is likewise permissible as to the passenger."). But see People v. Cartwright, 72 Cal.App.4th 1362, 85 Cal. Rptr.2d 788, 791-93 (1999).
The information Officer Thomas received from another police officer that the car in which defendant was riding was being operated by a driver with a revoked license provided the probable cause required to justify the stop. Moreover, the stop did not last any longer than was necessary to determine whether the driver had a license and other required driving credentials. When Officer Thomas' initial inquiries of the driver revealed that he did not have a license, Thomas was justified in detaining him for the additional period required to issue a summons. In addition, because defendant and the other passenger told Thomas that they did not have licenses, and the driver could not produce a registration or other evidence of ownership, Thomas had an objectively reasonable basis to detain the car and its occupants to assure that the car was driven only by a properly licensed driver and to confirm that it was not stolen.
The valid temporary detention of the car and its occupants was not transformed into a violation of defendant's Fourth Amendment rights simply because Officer Thomas asked him whether he had contraband or a weapon. The Supreme Court has recognized that even when the police have no grounds to detain a person, "mere police questioning does not constitute a seizure." Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991). "While most citizens will respond to a police request, the fact that people do so, and do so even without being told that they are free not to respond, hardly eliminates the consensual nature of the response." INS v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247, 255 (1984). It is only when "the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded," that a Fourth Amendment violation may *338 be found. Id. at 216, 104 S.Ct. at 1763, 80 L.Ed.2d at 255; see also State v. Davis, 104 N.J. 490, 497-98, 517 A.2d 859 (1986); State v. Maryland, 327 N.J.Super. 436, 452-53, 743 A.2d 876 (App.Div.).
Consequently, if a motor vehicle is subject to a valid police stop, the police may question the occupants, even on a subject unrelated to the purpose of the stop, without violating the Fourth Amendment, so long as such questioning does not extend the duration of the stop. See United States v. Palomino, 100 F.3d 446, 449-50 (6th Cir.1996); United States v. Shabazz, 993 F.2d 431 (5th Cir.1993); Cartwright, supra, 85 Cal.Rptr.2d at 794; Bell, supra, 51 Cal.Rptr.2d at 122-24; State v. Griffith, 236 Wis.2d 48, 613 N.W.2d 72, 78-85 (2000); see also Ohio v. Robinette, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). But see United States v. Holt, 229 F.3d 931, 935-37 (10th Cir.2000). In such a situation, the evidence of a motor vehicle violation provides the justification for the stop, and a police officer may question the occupants of the car during the stop without any additional justification.
In Shabazz, police officers stopped a car for speeding. While running a computer check of the driver's license, the officers questioned the driver and a passenger concerning their recent whereabouts. After the police received conflicting answers, they obtained the driver's consent to search the car, which resulted in the discovery of drugs. On appeal from their convictions, the driver and passenger argued that the police's questions as to where they had been before their trip violated the Fourth Amendment because those questions were "wholly unrelated to the initial justification for the stop." Id. at 436. However, the Court concluded that the questioning did not violate the Fourth Amendment because it did not extend the duration of the stop:
[W]e reject any notion that a police officer's questioning, even on a subject unrelated to the purpose of the stop, is itself a Fourth Amendment violation.... Mere questioning, ... is neither a search nor a seizure....
....
... [Consequently,] appellants cannot complain of questioning that took place during the pendency of a computer check. While appellants were under no obligation to answer the questions, the Constitution does not forbid law enforcement officers from asking.

[Id. at 436-37.]
See also Bell, supra, 51 Cal. Rptr.2d at 123 ("[I]nvestigative activities beyond the original purpose of a traffic stop are permissible as long as they do not prolong the stop beyond the time it would otherwise take.").
Officer Thomas' statement to defendant that he looked "really nervous" and inquiry as to whether defendant had any contraband or weapon did not prolong the stop. When Thomas made this inquiry, only a few minutes had elapsed since the initial stop, and Thomas still had not issued a summons to the driver or determined the ownership of the car. Thus, even if Thomas had ignored defendant's unusually nervous demeanor, the stop of the car and detention of the occupants incident to the stop would have continued for some additional period of time. Under these circumstances, Thomas' questioning of defendant did not constitute a "seizure" within the meaning of the Fourth Amendment or Article I, paragraph 7 of the New Jersey Constitution.
Moreover, even if Officer Thomas was required to have a reasonable suspicion that defendant was participating in criminal activity to inquire whether he possessed contraband or a weapon, he had an objectively reasonable basis for such suspicion. Before asking this question, Thomas had already ascertained that the driver of the car did not have either a license or a registration or other evidence of ownership of the car. Consequently, Thomas had a reasonable basis to conduct further investigation *339 to determine whether any of the other occupants owned or had permission to use the car. See Dickey, supra, 152 N.J. at 479-80, 706 A.2d 180; State v. Chapman, 332 N.J.Super. 452, 462-66, 753 A.2d 1179 (App.Div.2000). The most obvious form of investigation for this purpose was additional questioning. When defendant responded to Thomas' questions by acting unusually nervous, there was a reasonable basis for Thomas' suspicions to be enhanced and for him to broaden the scope of his inquiries. See United States v. Lyton, 161 F.3d 1168, 1170-71 (8th Cir.1998); United States v. Perez, 37 F.3d 510, 513-14 (9th Cir.1994); United States v. Soto, 988 F.2d 1548, 1555 (10th Cir.1993). The additional inquiry of defendant concerning possession of contraband or a weapon was brief and no more intrusive than required to determine whether he and his companions were operating the car without permission of the owner or engaged in other unlawful activity. Therefore, this inquiry satisfied the ultimate Fourth Amendment "touchstone" of "reasonableness." Florida v. Jimeno, 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297, 302 (1991).
Accordingly, the order granting defendant's motion to suppress is reversed, and the case is remanded to the trial court.
NOTES
[1] In considering claims that confessions were obtained involuntarily, the Supreme Court "has retained [a] due process focus, even after holding ... that the Fifth Amendment priviledge against self-incrimination applies to the States." Colorado v. Connelly, 479 U.S. 157, 163, 107 S.Ct. 515, 519, 93 L.Ed.2d 473, 482 (1986).