**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5497-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MARC STEPHENS,

     Defendant-Appellant.

_____

Argued December 13, 2018 – Decided January 30, 2019

Before Judges Simonelli and O'Connor.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Municipal Appeal No. 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.

Marc Stephens, appellant, argued the cause pro se.

Ian C. Kennedy, Special Deputy Attorney General/ Acting Assistant Prosecutor, argued the cause for respondent (Dennis Calo, Acting Bergen County Prosecutor, attorney; Ian C. Kennedy, of counsel and on the brief).

PER CURIAM

Following a trial de novo in the Law Division, defendant Marc Stephens was convicted of driving an unregistered automobile on a public highway, N.J.S.A. 39:3-4. We affirm.

We derive the following facts from the record. At approximately 11:13 p.m. on February 7, 2016, Police Officer Pat Keller of the Borough of Fort Lee Police Department saw three vehicles obstructing traffic on the right, northbound lane of Lemoine Avenue, a public highway. Keller testified that at that point, he had probable cause to issue defendant a summons for obstructing traffic, N.J.S.A. 39:4-67.

Keller entered the license plate numbers of the three vehicles into his patrol car computer and found that one of the vehicles, a 2003 four-door Mercedes Benz, was registered to defendant and the registration expired in May 2011.[1] It is undisputed that defendant's vehicle was not registered as a commercial vehicle and he used it for pleasure, not for commercial purposes or for the conveyance of persons for hire.

Keller tapped his air horn and the three vehicles pulled away. Keller followed defendant's vehicle and activated his overhead lights as defendant

---

[1] Defendant's vehicle bore California license plates.

entered the parking lot of a McDonald's restaurant. Defendant parked and Keller parked behind him. Defendant exited his vehicle and Keller instructed him to return to it for Keller's safety. At that point, defendant was detained.

Defendant produced a valid New Jersey driver's license, which indicted he resided in New Jersey, but no valid registration for his vehicle. Defendant also produced an expired California driver's license. Keller issued defendant a summons for driving an unregistered automobile, N.J.S.A. 39:3-4, and failing to have motor vehicle liability insurance, N.J.S.A. 39:6B-2.[2] Keller also issued defendant a verbal warning for obstructing traffic, N.J.S.A. 39:4-67. The encounter lasted approximately ten minutes, and defendant was free to go after Keller handed him the summonses. Defendant chose to remain in the parking lot until a tow truck arrived approximately one hour later.

Defendant has argued throughout this matter that he was not required to register his automobile because Title 39 only applies to motor vehicles used for commercial purposes or for the conveyance of persons for hire. Defendant also argued the registration requirement violated his right to travel under the Fifth and Fourteenth Amendments and United States Supreme Court precedents, and

---

[2] The municipal court judge found defendant not guilty of failing to have motor vehicle liability insurance.

A-5497-16T3

the stop was illegal under the Fourth Amendment and New Jersey Constitution because Keller testified he had no probable cause or reasonable suspicion that a crime was committed to justify the stop.[3] The municipal court and Law Division judges rejected all of these arguments, and so do we.

In our review of the Law Division's decision on a municipal appeal, "[w]e review the action of the Law Division, not the municipal court." State v. Robertson, 438 N.J. Super. 47, 64 (App. Div. 2014). We consider "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." State v. Stas, 212 N.J. 37, 49 (2012) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

"Unlike the Law Division, which conducts a trial de novo on the record, Rule 3:23-8(a), we do not independently assess the evidence." State v. Gibson, 429 N.J. Super. 456, 463 (App. Div. 2013) (quoting Locurto, 157 N.J. at 471), rev'd on other grounds, 219 N.J. 227 (2014). The rule of deference is more

---

[3] At the trial de novo before the Law Division, defendant produced a motor vehicle recording (MVR) from Keller's patrol car and argued it showed his vehicle was not one of the vehicles obstructing traffic. The Law Division judge reviewed the MVR recording and found it did not support defendant's argument. Defendant has not supplied the MVR on appeal. That deficiency prohibits our review of his argument regarding the MVR. See Cipala v. Lincoln Tech. Inst., 179 N.J. 45, 55 (2004); Soc'y Hill Condo. Ass'n. v. Soc'y Hill Assocs., 347 N.J. Super. 163, 177-78 (App. Div. 2002).

A-5497-16T3

compelling where, such as here, the municipal and Law Division judges made concurrent findings.  Locurto, 157 N.J. at 474.  "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. (citing Midler v. Heinowitz, 10 N.J. 123, 128-29 (1952)).  "Therefore, appellate review of the factual and credibility findings of the municipal court and the Law Division 'is exceedingly narrow.'" State v. Reece, 222 N.J. 154, 167 (2015) (quoting Locurto, 157 N.J. at 470).

However, we afford no special deference to a trial court's interpretation of the law and the legal consequences that flow from established facts.  Manalapan Realty, L.P v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).  Because the Law Division's judgment in this case rested on its legal interpretations, our scope of review is de novo, without affording such judgment any special deference.

We first address defendant's argument that the stop and search of his vehicle was illegal under the Fourth Amendment and New Jersey Constitution because Keller testified he had no probable cause or reasonable suspicion that "a crime" was committed to justify the stop.  Defendant has misinterpreted

Keller's testimony and ignores the correct legal standard governing the stop of an automobile under the circumstances here.

At the trial in the municipal court, the following colloquy occurred during defendant's cross-examination of Keller:[4]

> Q    You stated that on Lemoine Avenue that vehicles were parked?
>
> A    You were one of three vehicles stopped in the right northbound lane.
>
> Q    Okay.  So you're saying that the vehicle was parked.  At any time when the vehicle was parked, did you have a reasonable suspicion to believe that a crime was being committed?
>
> A    No, just a vehicle obstructing traffic.
>
> Q    Okay.  So this is not a crime[?]
>
> A    It's a motor vehicle offense.
>
> Q    So at any time did you have any reasonable suspicion that [defendant] was about to commit a crime?
>
> A    I did not leave my vehicle.
>
> Q    So at this point do you believe - - you stated that you ran the license plate.  What's the procedure for the Fort Lee Police Department to run license plates.  Does there have to be a crime committed or you can just swipe the block and look at any license?

---

[4]  Defendant has appeared pro se throughout this matter.

A-5497-16T3

A    The reason why I ran the three vehicles was because they were obstructing traffic.

Q    And you just did it as obstructing traffic as a crime?

A    It's a motor vehicle offense.

Q    And what offense would that be?

A    Obstructing traffic.

"It is firmly established that a police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense." Locurto, 157 N.J. at 470 (emphasis added) (quoting State v. Smith, 306 N.J. Super. 370, 380 (App.Div.1997)). "Reasonable suspicion" means that "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968). "Reasonable suspicion" is "less than proof . . . by a preponderance of evidence[,]" and "less demanding than that for probable cause," but must be something greater "than an 'inchoate or unparticularized suspicion or "hunch."'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, 392 U.S. at 27).

Ultimately, "courts will not inquire into the motivation of a police officer whose stop of an automobile is based upon a traffic violation committed in his

presence." State v. Kennedy, 247 N.J. Super. 21, 29 (App. Div. 1991). "The fact that the justification for the stop was pretextual [is] . . . irrelevant," ibid., and the State need not prove that the suspected motor vehicle violation has in fact occurred. Locurto, 157 N.J. at 470. Investigatory automobile stops are valid in situations where the objective basis for the stop was a minor traffic infraction. Id. at 466 (finding the stop was justified based on the officer's observations of defendant driving "at 'a high rate of speed'" in a zone where "[t]he posted speed limit was thirty-five miles per hour[]"); see also State v. Smith, 306 N.J. Super. 370, 380 (App. Div. 1997) (finding the stop was justified based upon the officer's observations of defendant weaving in and out of lanes); State v. Murphy, 238 N.J. Super. 546, 548-49 (App. Div. 1990) (finding the stop was justified where the vehicle's license plate was in a diagonal position, which the officer believed violated N.J.S.A. 39:3-33); State v. Carter, 235 N.J. Super. 232, 237 (App. Div. 1989) (finding the stop was justified based upon the officer's observations of defendant tailgating another vehicle).

"Temporary detention of individuals during the stop of an automobile by police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment." State v. Baum, 393 N.J. Super. 275, 286 (App. Div. 2007) (quoting State v. Dickey, 152

8

N.J. 468, 475 (1998)).  "Therefore, any automobile stop, however brief, must satisfy the Fourth Amendment's basic requirement of 'reasonableness.'"  Ibid. (quoting State v. Hickman, 335 N.J. Super. 623, 634 (App. Div. 2000)).  "In terms of a stop, this requirement may be met by showing that 'the police [had] probable cause to believe that a traffic violation had occurred.'"  Ibid. (alteration in original) (quoting Delaware v. Prouse, 440 U.S. 648, 663 (1979); Dickey, 152 N.J. at 475).

"When the officer's stop is justified at its inception, the question becomes whether the ensuing investigation is 'reasonably related in scope to the circumstances which justified the interference in the first place.'"  Ibid. (quoting Terry, 392 U.S. at 20).  "At a traffic stop, an officer may seek a driver's license, as well as proof of ownership and insurance.  The officer may also ask 'routine' questions of the vehicle's occupants, such as where they are going and coming from, and for what purpose."  Id. at 286-87 (citation omitted).

Keller clearly had probable cause and a reasonable and articulable suspicion that defendant committed a motor vehicle offense in his presence to justify the stop.  Keller observed defendant obstructing traffic, in violation of N.J.S.A. 39:4-67, and driving an unregistered automobile, in violation of N.J.S.A. 39:3-4.  The ensuing investigation of defendant's driver's license and

registration reasonably related in scope to the circumstances which justified the stop. Accordingly, the stop and search of defendant's automobile was valid and did not violate defendant's federal or State constitutional rights.

Further, license plate checks "are not traditional searches subject to Fourth Amendment restrictions, they can be 'random,' that is, not based on reasonable suspicion, and thus need not be governed by predetermined objective criteria." State v. Segars, 172 N.J. 481, 490 (2002); see also State v. Donis 157 N.J. 44, 48, 54-55 (1998); State v. Lewis, 288 N.J. Super. 160, 164 (App. Div. 1996); State v. Myrick, 282 N.J. Super. 285, 292-93 (Law Div. 1995). However, a license plate check cannot be based on impermissible motives such as race. Segars, 172 N.J. at 491.

Keller did not need reasonable suspicion to randomly check defendant's license plate, and there was no evidence of an impermissible motive in Keller's check of defendant's license plate. Accordingly, the stop of defendant's automobile based on the random license plate check was valid and did not violate defendant's federal or State constitutional rights.

Defendant also misinterprets New Jersey motor vehicle laws. The registration requirement, N.J.S.A. 39:3-4, provides, in pertinent part: "Except as hereinafter provided, every resident of this State and every nonresident whose

automobile . . . shall be driven in this State shall, before using the vehicle on the public highways, register the same, and an automobile . . . shall not be driven unless so registered."

The term "automobile" "includes all motor vehicles except motorcycles." N.J.S.A. 39:1-1 (emphasis added). The term "motor vehicle" "includes all vehicles propelled otherwise than by muscular power, excepting such vehicles as run only upon rails or tracks and motorized bicycles." Ibid. (emphasis added). Exempted from the registration requirement are "[a]utomobile fire engines and such self-propelling vehicles as are used neither for the conveyance of persons for hire, pleasure or business, nor for the transportation of freights, such as steam road rollers and traction engines are excepted from the provisions of this chapter." N.J.S.A. 39:3-1 (emphasis added). Thus, all motor vehicles used for the conveyance of persons for hire, pleasure, or business must be registered if driven by a resident or nonresident in this State.

Defendant used his vehicle for pleasure. Thus, his vehicle was not exempt from the registration requirement under N.J.S.A. 39:3-4, and he was required to register the vehicle if he drove it in this state, whether he was a resident of New

Jersey or California. Defendant violated N.J.S.A. 39:3-4 by driving an unregistered motor vehicle this State.[5]

Lastly, the Supreme Court of the United States has long recognized the power of the states to regulate, and require the registration of, motor vehicles:

> In the absence of national legislation covering the subject a State may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles, −those moving in interstate commerce as well as others. And to this end it may require the registration of such vehicles and the licensing of their drivers, charging therefor reasonable fees graduated according to the horse-power of the engines, −a practical measure of size, speed, and difficulty of control. This is but an exercise of the police power uniformly recognized as belonging to the States and essential to the preservation of the health, safety and comfort of their citizens; and it does not constitute a direct and material burden on interstate commerce.
>
> [Hendrick v. State of Maryland 235 U.S. 610, 622 (1915) (emphasis added).]

See also Kane v. New Jersey, 242 U.S. 160, 167 (1916) (holding that "[t]he power of a State to regulate the use of motor vehicles on its highways has been

---

[5] Defendant also misinterprets California motor vehicle laws. He argues he purchased his automobile in California and under Cal. Veh. Code § 260, passenger vehicles are exempt from registration in California. However, Cal. Veh. Code § 260 only defines "commercial vehicle" and says nothing about registration. Rather, Cal. Veh. Code § 4000(a)(1), requires all motor vehicles to be registered in California.

recently considered by this court and broadly sustained. It extends to nonresidents as well as to residents"). Our Supreme Court has held that N.J.S.A. 39:3-4

> does not impose a direct and material burden on interstate commerce. It constitutes a reasonable exercise of the police power for public safety and order in a field not occupied by the Federal authority. The power of the State to regulate the use of motor vehicles on its highways extends to nonresidents as well as residents.
>
> [State v. Garford Trucking, 4 N.J. 346, 354 (1950) (citation omitted).]

See also Pine v. Okzewski, 112 N.J.L. 429, 434 (E. & A. 1934) (holding the State may require registration of motor vehicles moving in interstate commerce as well as others by residents and nonresidents).

In addition, we have noted "the United States Supreme Court has emphasized that 'the States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation and hence, that licensing, registration, and vehicle inspection requirements are being observed.'" State v. Kadelak, 280 N.J. Super. 349, 361 (App. Div. 1995) (emphasis added) (quoting Prouse, 440 U.S. at 658). Accordingly, the registration requirement does not violate defendant's

A-5497-16T3

constitutional right to travel.  Defendant's arguments to the contrary are without sufficient merit to warrant further discussion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5497-16T3