**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4859-17

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANDREW N. BOWENS, a/k/a
ANDREW D. BOWENS,
A.D. BOWENS, A.D. BRAWNES,
DAVID BOWEN, JAMES
BROWN, JAMES BRAWN, and
JEROME B. BROWN

    Defendant-Appellant.

_____

Submitted March 25, 2020 – Decided April 16, 2021

Before Judges Fuentes and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-10-0724.

Joseph E. Krakora, Public Defender, attorney for appellant (Molly O'Donnell Meng, Assistant Deputy Public Defender, of counsel and on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Timothy M. Ortolani, Special

Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

A Union County Grand Jury returned an indictment against defendant Andrew N. Bowens charging him under Count One with third degree possession of a control dangerous substance, namely heroin, cocaine, and/or fentanyl, N.J.S.A. 2C:35-10a(1)[1], under Count Two with third degree possession of heroin, cocaine, and/or fentanyl with intent to distribute, N.J.S.A. 2C:35-5b(3), and under Count Three with third degree possession of heroin, cocaine, and/or fentanyl with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7a.

Defendant moved to suppress illicit drugs seized by the police incident to a search of his person after a lawful arrest for an outstanding warrant. Defendant's initial encounter with the police was the result of a motor vehicle stop of a car defendant was a passenger in at the time. After the trial court denied his motion to suppress, defendant entered into a negotiated agreement

---

[1] Calvin Ham, a passenger in the car, was also indicted for third degree possession of heroin, cocaine, and/or fentanyl.

with the State through which he pled guilty to third degree possession of heroin, cocaine, and/or fentanyl.[2]   The State agreed to dismiss the remaining counts in the indictment and recommend the court sentence defendant to a term of three years imprisonment.

The judge questioned defendant directly to ensure he understood the terms of the plea agreement and was voluntarily and knowingly waiving his rights to stand trial and to ensure there was a factual basis to support his admission of guilt.  On March 16, 2018, the judge sentenced defendant in accordance with the plea agreement.

In this appeal, defendant argues the police officers did not have a legally viable basis to stop the car.  We disagree and affirm substantially for the reasons expressed by the motion judge.  We derive the following facts from the record developed at the evidentiary hearing conducted in response to defendant's motion to suppress.

---

[2] In the brief filed in this appeal, defendant's attorney incorrectly states that defendant pled guilty to "third-degree possession of [a] [control dangerous substance] with the intent to distribute." (emphasis added).  However, the transcript of the plea hearing shows defendant pled guilty only to third degree possession under Count One of the indictment.  This is confirmed in the judgment of conviction.

A-4859-17

Plainfield Police Detective James Williams was the only witness who testified at this hearing. According to Williams, at approximately 3:30 p.m. on June 21, 2016, he and Detective Pierre McCall were on patrol in an unmarked police car when they observed a car turn northbound onto Berckman Street without activating its turn signal. Williams testified that based on this Title 39 infraction,[3] they "initiated a motor vehicle stop."

The driver of the car immediately responded to the detectives' signals and pulled over to the curb. The detectives stepped out of their unmarked police car and approached the vehicle on foot. McCall approached from the driver's side and Williams from the passenger's side. There were three occupants in the car. Darren Blair was the driver, defendant was next to him in the front passenger seat, and codefendant Calvin Ham was seated directly behind defendant in the right rear passenger seat. Williams recognized Blair from previous "different narcotics investigations" and information that mentioned Blair's involvement in the sale of narcotics. He also recognized defendant and Ham "from previous investigations."

When Blair was not able to produce a driver's license, the detectives asked him to step out of the car. He complied without incident. McCall ran a computer

_____

[3] See N.J.S.A. 39:4-126.

check to determine whether Blair had any active warrants while Williams spoke with Ham. Williams described Ham's demeanor as "nervous," not willing to make "eye contact," and "shaking pretty badly." Williams testified that Ham's behavior raised his suspicions. When asked to specify, Williams responded: "he may have some type of contraband on him and/or [a] weapon." Williams described Ham as the most nervous passenger he had ever encountered up to that point in his career as a police officer.

At this point, Williams asked Ham to step out of the car. As Ham stepped out of the car, Williams testified he saw a wax paper fold on the seat where Ham had been sitting. When Ham attempted to grab the wax paper, Williams immediately "placed him in handcuffs and took the suspected CDS [control dangerous substance] from him." Williams also asked defendant to step out of the car in order to search the interior of the vehicle. Williams arrested defendant when he discovered there was an outstanding warrant for his arrest. A search of defendant's person incident to his arrest revealed nine wax paper folds containing suspected illicit narcotics.

The detectives placed defendant and Ham in their unmarked police car to transport them to the Plainfield Police Headquarters. Consistent with established policy, Williams searched the vehicle before placing the two

handcuffed men inside. Williams testified that while en route, defendant "began putting his hands down his pants." When Williams instructed him to stop, defendant complied without incident. However, "[a] few seconds later he did the same thing again and he pulled out a plastic bag later found to have substantial amount of suspected CDS." The bag actually contained eighty-nine wax paper folds of suspected CDS and twenty-nine plastic knots of suspected CDS.

Against this factual record, defendant raises the following arguments in this appeal.

POINT I

> THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE A) THE STATE FAILED TO MEET ITS BURDEN OF DEMONSTRATING THE VALIDITY OF THE MOTOR VEHICLE STOP AND B) NERVOUSNESS ALONE IS INSUFFICIENT TO ORDER A PASSENGER OUT OF A CAR.
>
> > a. The State Failed To Meet Its Burden Of Demonstrating That The Motor Vehicle Stop Was Lawful.
> >
> > b. The Codefendant's Nervousness, Without More, Was Insufficient To Order Him Out Of The Vehicle.

6

Our standard of review of the trial court's factual findings in the context of deciding a motion to suppress evidence in a criminal case is well-settled. We are bound to uphold the factual findings underlying the trial court's decision, provided that those findings are "supported by sufficient credible evidence in the record." State v. Scriven, 226 N.J. 20, 40 (2016). We can reject the motion judge's findings "only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). However, we review de novo the judge's legal conclusions. State v. Watts, 223 N.J. 503, 516 (2015).

Here, the motion judge accepted Detective Williams' testimony as credible and found "the detectives lawfully stopped Mr. Blair's car after observing Blair turn without signaling." Based on this factual foundation, the judge noted that "[a] police officer can stop a car if the officer has a reasonable suspicion to believe that the driver has committed a motor vehicle infraction." Scriven, 226 N.J. at 33-34 (citing State v. Locurto, 157 N.J. 463, 470 (1999)). Here, the relevant Title 39 infraction provides:

> No person shall . . . turn a vehicle from a direct course or move right or left upon a roadway, or start or back a vehicle unless and until such movement can be made with safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter

provided in the event any other traffic may be affected by such movement.

[N.J.S.A. 39:4-126]

Defendant acknowledges that "[a] police officer does not need to prove beyond a reasonable doubt that such a violation has occurred in order to stop a vehicle for that violation." Notwithstanding this concession, defendant relies on State v. Williamson, 138 N.J. 302, 304 (1994) to argue that the detectives did not lawfully stop the car because they did not have an "articulable basis" to conclude that the turn "might have an effect on traffic." We disagree. As the State correctly points out in its brief, this court made clear in State v. Moss that an officer may rely on N.J.S.A. 39:4-126 to make a lawful motor vehicle stop even if the only vehicle that may be affected by the driver's failure to make an appropriate turn signal is the police car behind it. 277 N.J. Super. 545, 547 (App. Div. 1994). Indeed, the Supreme Court held in Williamson that "other traffic" can include a police vehicle. 138 N.J. at 304.

Here, the motion judge found that the driver of the car was not able to produce a valid driver's license. Detective Williams testified that Ham's unusually nervous demeanor provided a reasonable basis to ask him and defendant to step out of the car. The motion judge accepted Williams' account of this encounter. The judge found Williams had reasonably articulable grounds

A-4859-17

to suspect Ham and/or defendant may have had a weapon on their person or were in possession of illicit narcotics. Relying on this court's decision in State v. Hickman, the judge found that during this lawful motor vehicle stop, the detectives had the right to question the occupants "even on a subject unrelated to the purpose of the stop, without violating the Fourth Amendment so long as the questioning does not extend the duration of the stop." 335 N.J. Super. 623, 636 (App. Div. 2000). We are also satisfied that the actions taken by Detective Williams here comport with the standard our Supreme Court adopted in State v. Smith, 134 N.J. 599, 618 (1994), and recently reaffirmed in State v. Bacome, 228 N.J. 94, 106-07 (2017).

Once defendant was lawfully detained based on an outstanding warrant, a search of his person incident to the arrest revealed he was in possession of illicit narcotics. State v. Lentz, 463 N.J. Super. 54, 69 (App. Div. 2020). There is therefore no legal or factual basis to suppress this evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9