993 A.2d 1216

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. DANNY MAI, DEFENDANT–RESPONDENT.

Argued October 13, 2009—Decided May 6, 2010.

*Steven A. Yomtov*, Deputy Attorney General, argued the cause for appellant (*Anne Milgram*, Attorney General of New Jersey, attorney).

*Louis P. Nappen* argued the cause for respondent (*Evan F. Nappen*, attorney).

Justice RIVERA–SOTO delivered the opinion of the Court.

Responding to an early morning hours radio call of a "man with a gun," police officers approached a double-parked van containing five occupants; the van also was surrounded by a half-dozen young men. Based on that obvious traffic violation, the police detained the van. Fearing for his and his fellow officers' safety, one of the police officers opened the van's passenger-side sliding side door as a protective measure before actually ordering the passengers to exit the van. In so doing, he observed that the

appearance of one of the occupants of the van was consistent with the description of a "man-with-a-gun" earlier broadcast over the radio. That passenger was told to step out of the van and, as he did as instructed, another police officer observed a firearm on the floor of the van where the passenger was seated. A loaded weapon was retrieved and the passenger was arrested; a search of the passenger revealed a gun holster and a second loaded ammunition magazine fitting the retrieved weapon.

The trial court, concluding that the police were justified in asking the van's passengers to exit the van, sustained the search and seizures. The Appellate Division disagreed, reasoning that the police were not authorized to open the van's passenger-side sliding door in the first instance and, hence, all searches conducted and all items seized thereafter should be suppressed.

We disagree. The standard for determining whether, in the context of a traffic violation, a police officer may order that a passenger alight from a vehicle previously was set forth in *State v. Smith*, 134 *N.J.* 599, 637 *A.*2d 158 (1994). Applying the *Smith* standard to the proofs adduced at the suppression hearing, we readily conclude that the officers presented sufficient "facts in the totality of the circumstances that would create in a police officer a heightened awareness of danger that would warrant an objectively reasonable officer in securing the scene in a more effective manner by ordering the passenger to alight from the car[,]" *id.* at 618, 637 *A.*2d 158; those same circumstances likewise authorize the police officer to open the door of the vehicle as part of ordering a passenger to exit. Based on that conclusion, the seizure of the firearm was proper under the plain view doctrine, and the seizure of the gun holster and loaded magazine from the passenger was lawful as the fruits of a proper search incident to an arrest. We, therefore, reverse the judgment of the Appellate Division and reinstate the judgment of conviction and sentence.

I.

At approximately 4:25 a.m. on Friday, May 4, 2007, Jersey City Police Officers Michael J. Szymanski and Martha S. Rodriguez

responded to a radio call of "a male in the area of Oakland and Jefferson Avenue[s], black leather jacket, mask and he was waving a gun." En route, the officers received a separate radio call from Sergeant Joseph Olszewski that there was a silver van double-parked at 97 Jefferson Avenue [1] and that there were a number of young men milling outside the van. Two additional police cars responded as back-up, and Officers Szymanski and Rodriguez conducted a motor vehicle stop of the van while other officers controlled the nearby young men.

Approaching the van, Off. Szymanski was able to discern that "inside the van there was—there was also another large group inside that vehicle." As he reached the passenger side of the van, he "notice[d] that there was a group of people moving around inside the [van] but [he] couldn't tell exactly what they were doing." He explained that he "opened up the vehicle for officer safety[,] I didn't know what was going on[,]" and that he was concerned about his and his fellow officers' safety. He explained that "[b]ecause there was a call [of] a man with a gun, so I'm not [going to] take anything lightly, you know, things happen in an instant. . . . I didn't want to take a chance of him possibly pulling a weapon out on me and firing." Off. Szymanski opened the passenger side sliding door and observed defendant Danny Mai seated immediately next to the sliding door on the middle row of seats; defendant was wearing a black leather coat and, in Sgt. Olszewski's words, "a black thing around his neck," an outfit consistent with the earlier radioed description of "the man with a gun." Also, of the eleven young men present—five within the van and another six outside—only defendant wore clothing that matched the radioed description.

Off. Szymanski "instructed [defendant] to come out, [and] place his hands on the ground to be patted down for weapons." As defendant started to exit the van, Sgt. Olszewski "saw the gun, it

---

[1] 97 Jefferson Avenue is located at or near the corner of Jefferson and Oakland Avenues.

was just ... there on the floor.... It was ... right down on the floor, ... right where [defendant] was sitting." Sgt. Olszewski "called out to [Off. Szymanski], I said [']there's a gun, cuff him.[']" As Sgt. Olszewski further explained, he "took the gun for safety reasons so nobody else could touch it and then we took everybody else [out of the van] and cuffed them all." That weapon, a .32 caliber semi-automatic handgun, was loaded with seven rounds of ammunition in the magazine.

Defendant was arrested and, in a search of defendant's person incident to that arrest, the police recovered "another magazine loaded with seven (7) rounds of ammunition in [defendant's] left front pocket and a gun holster strapped around [defendant]'s shoulders." The van was impounded and two summonses were issued—one "for failure to inspect and make repairs[,]" and the second for a "double parked vehicle[.]"

Based on those events, on August 7, 2007, the Hudson County grand jury returned a two-count indictment, charging defendant with third-degree unlawful possession of a handgun, in violation of *N.J.S.A.* 2C:39–5(b), and third-degree possession of a firearm with the purpose to use it unlawfully against the person or property of another, in violation of *N.J.S.A.* 2C:39–4(a).

Defendant moved to suppress the evidence seized from the van and from his person. *See R.* 3:5–7(a) (setting forth procedure for motion to suppress). On October 15, 2007, the trial court conducted a hearing on that motion; Sgt. Olszewski and Off. Szymanski testified and counsel presented their arguments.

After finding the police officers credible, the trial court initially focused on the circumstances attendant to the vehicle stop. Based on its factual findings, it stated those circumstances as:

[W]e have the van location, we have an enclosed van in which [defendant] was located. We have a double parked mini van. We have the suspicious circumstances of all these male[s] outside and within the vehicle in the early morning hours. We have movement in that vehicle[,] which was testified to by Officer Szymanski[,] as they approached the vehicle.

The trial court then stated the overarching legal principle thusly:

When an officer is justified in believing that the individual who[se] suspicious behavior he is investigating at close range is armed and presently dangerous [to]

the officer or others[, it is] clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

Applying that standard to the facts adduced before it at the suppression hearing, the trial court explained that defendant "was ordered out of the van after a valid investigatory stop of the van had taken place." The trial court concluded that, "once that happens, we have a plain view of the gun in question which falls within [a] recognized exception to the general warrant requirement to be admissible." It then reasoned that "from there we have the . . . arrest of the defendant and the search incident to the arrest where the additional paraphernalia connected to this gun are found." Concluding that the challenged police actions were lawful, the trial court denied defendant's motion to suppress.

On November 26, 2007, defendant entered a plea to the first count of the indictment, charging defendant with third-degree unlawful possession of a handgun, in violation of *N.J.S.A.* 2C:39–5(b). In exchange for that plea, the second count of the indictment—charging defendant with third-degree possession of a firearm with the purpose to use it unlawfully against the person or property of another, in violation of *N.J.S.A.* 2C:39–4(a)—was to be dismissed, and defendant was to be sentenced to a two-year period of probation, subject to (1) incarceration in the Hudson County Jail for a period of 364 days, and (2) the obligation to "[o]btain and maintain gainful employment when released." On January 11, 2008, the trial court found that the "[m]itigating [f]actors preponderate over [a]ggravating [f]actors." Based on that finding, defendant was sentenced as noted. *See N.J.S.A.* 2C:43–6(a)(3) (providing that sentence for third-degree crime shall be "for a specific term of years which shall be fixed by the court and shall be between three years and five years"); *N.J.S.A.* 2C:43–2(b)(2) (providing for imposition of probationary term and, "in the case of a person convicted of a crime, to imprisonment for a term fixed by the court not exceeding 364 days to be served as a condition of probation"); *N.J.S.A.* 2C:44–1(d) (providing that presumption of imprisonment applies to all first-degree crimes, to all second-

degree crimes, and to those third-degree crimes where "[t]here is a substantial likelihood that the defendant is involved in organized crime activity" (incorporating, for third-degree crimes, *N.J.S.A.* 2C:44–1(a)(5))).

Defendant appealed the trial court's denial of his motion to suppress [2] and, in an unpublished opinion, the Appellate Division reversed. According to the panel, "when the police arrived on the scene at 97 Jefferson Avenue, they observed a minivan stopped in the roadway, which created a reasonable and justifiable suspicion of a violation of" the traffic laws. It therefore concluded that an "investigatory stop of the vehicle was proper under *Terry [v. Ohio,* 392 *U.S.* 1, 88 *S.Ct.* 1868, 20 *L.Ed.*2d 889 (1968) ]" (citing *State v. Cerefice,* 335 *N.J.Super.* 374, 384 n. 4, 762 *A.*2d 668 (App.Div. 2000)). In the Appellate Division's view, "because the police observed the motor vehicle violation, they had probable cause to stop the vehicle and cite the driver."

The panel then addressed the crux of this appeal: "whether the police action in opening the minivan's door and removing defendant from the minivan was constitutional." Without referring to *Smith, supra,* the panel rejected, without explanation, the trial court's findings, reasoning instead that

> [h]ere, the officers expressed concern for their safety as a basis for ordering defendant to step out of the minivan, but the totality of the circumstances does not suggest any basis for such a concern. Although they saw the occupants of the vehicle moving about, they did not testify that their movements were furtive. They did not testify to any conversation with the driver or any occupant of the minivan, and thus had no cause for concern based on anything the occupants of the vehicle said to them. unlike *State v. Baum,* 393 *N.J.Super.* 275, 287–88, 923 *A.*2d 276 (App.Div.), *certif. dismissed,* 192 *N.J.* 473, 932 *A.*2d 25 (2007). Indeed, they did not even speak to the driver before opening the right rear door and ordering defendant out of the minivan. They also did not testify that the individuals outside the vehicle did or said anything to cause them to fear for their safety. Thus, the only basis they articulated for their safety concerns was the anonymous tip.

_____

[2] *See R.* 3:5–7(d) (providing that denial of suppression motion "may be reviewed on appeal from a judgment of conviction notwithstanding that such judgment is entered following a plea of guilty").

Stating that the relevant inquiry is "whether the officers' belief that defendant was armed and dangerous was reasonable in the circumstances[,]" (citing *State v. Garland*, 270 *N.J.Super.* 31, 42, 636 *A.*2d 541 (App.Div.), *certif. denied*, 136 *N.J.* 296, 642 *A.*2d 1005 (1994)), the panel concluded that

> [i]n this case, we are satisfied that the officers' safety concern was not reasonable because it was based solely on the anonymous tip that, standing alone, could not even justify a *Terry* stop, much less justify a sudden and intrusive opening of the door and an instruction to step out of the vehicle. Had the door not been opened and defendant not been ordered out of the minivan, the gun would not have been in plain view and, thus, no other exception to the requirement for a warrant existed in this case. The evidence seized from the minivan and from defendant's person should have been suppressed under *Wong Sun [v. United States*, 371 *U.S.* 471, 487–88, 83 *S.Ct.* 407, 417, 9 *L.Ed.*2d 441, 455 (1963) ].

We granted the State's petition for certification, *State v. Mai*, 199 *N.J.* 516, 973 *A.*2d 384 (2009), and now reverse.

## II.

Claiming that "the Appellate Division parted ways with settled law with respect to the measures that the police may take to protect themselves during the course of a motor vehicle detention[,]" the State asserts that the governing rule here was defined plainly in 1994, when *Smith*, *supra*, was decided. It also claims that the police had the authority to order defendant out of the vehicle and that such authority necessarily subsumes the right to conduct a "protective door opening." [3]

---

[3] The State advances two additional arguments. First, the State suggests that *Smith*, *supra*, be reconsidered in light of *Maryland v. Wilson*, 519 *U.S.* 408, 415, 117 *S.Ct.* 882, 886, 137 *L.Ed.*2d 41, 48 (1997) (extending rule of *Pennsylvania v. Mimms*, 434 *U.S.* 106, 98 *S.Ct.* 330, 54 *L.Ed.*2d 331 (1977), from drivers only to include also passengers, and holding that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop" (footnote omitted)). Second, it argues that the Appellate Division's reliance on *Florida v. J.L.*, 529 *U.S.* 266, 120 *S.Ct.* 1375, 146 *L.Ed.*2d 254 (2000), is misplaced, because the motor vehicle violation present in this case provided "an independent basis for the detention, supported by its own level of reasonable suspicion or probable cause[.]"

Defendant asserts that the Appellate Division was correct and that the police officers acted unreasonably in opening the van's passenger side sliding door. In defendant's view, the asserted traffic violation cannot act as a subterfuge for the fact that the police responded to an anonymous "tip" of a "man with a gun," and that all of the police's actions were motivated by that tip and that tip alone. Defendant reasons that, if the police were not authorized to open the van's door, then all fruits of that unlawful search must be suppressed.

### III.

### A.

We retrace familiar ground. In *Smith, supra,* also a case where a vehicle was detained for a traffic infraction and a passenger was instructed to alight from the car, "[t]he critical issue [was] whether [a police officer's] order to the passenger ... to get out of the car was reasonable." 134 *N.J.* at 609, 637 *A.*2d 158. After analyzing the per se rule of *Pennsylvania v. Mimms,* 434 *U.S.* 106, 98 *S.Ct.* 330, 54 *L.Ed.*2d 331 (1977)—which "permits an officer to order the *driver* out of a vehicle incident to a lawful stop for a traffic violation," *Smith, supra,* 134 *N.J.* at 618, 637 *A.*2d 158 (emphasis supplied)—we "decline[d] to extend that *per se* rule to passengers." *Ibid.* We instead "determine[d] that an officer must be able to point to specific and articulable facts that would warrant heightened caution to justify ordering the occupants to step out of a vehicle detained for a traffic violation." *Ibid.*

 *Smith* reasoned that "[a]lthough the requirements for ordering a passenger from a vehicle are more stringent than those for ordering a driver out under the *Mimms per se* rule, the standard that justifies an order to a passenger to step out of a vehicle does not rise to the *Terry* standard that must be met for a

---

In light of our disposition of this appeal, we need not address the State's additional arguments.

protective pat-down." *Ibid.* The Court explained that "[w]e adopt this lesser standard because of the need to protect police officers and because of the minimal intrusion the requirement to exit the car imposes on the passenger." *Ibid.* *Smith* sets forth the following rule:

> To support an order to a passenger to alight from a vehicle stopped for a traffic violation, therefore, the officer need not point to specific facts that the occupants are "armed and dangerous." Rather, the officer need point only to some fact or facts in the totality of the circumstances that would create in a police officer a heightened awareness of danger that would warrant an objectively reasonable officer in securing the scene in a more effective manner by ordering the passenger to alight from the car.
>
> . . . .
>
> To determine whether a passenger may be ordered from a vehicle, we likewise reject the proposition that such an intrusion will be justified solely because of an officer's "hunch." Rather, the officer must be able to articulate specific reasons why the person's gestures or other circumstances caused the officer to expect more danger from this traffic stop than from other routine traffic stops.
>
> [*Id.* at 618–19, 637 A.2d 158.]

We see no reason to depart from the elegant reasoning that undergirds this settled principle in making the parallel determination of whether a police officer has the authority to open a vehicle door as part of issuing an order to exit the vehicle.[4] In the realm of defining reasonable searches and seizures, no meaningful or relevant difference exists between the grant of authority to

---

[4] As noted earlier, *supra* at n. 3, the State urges that we adopt the holding of Wilson, *supra,* that is, that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." 519 *U.S.* at 415, 117 *S.Ct.* at 886, 137 *L.Ed.*2d at 48 (footnote omitted). No persuasive or compelling reason has been advanced to support departing from *Smith's* reasoning and adopting, instead, the later rationale of Wilson. That case was decided under the Fourth Amendment to the United States Constitution, *U.S. Const.* amend. IV, and we have consistently "recognize[d] that this Court has the power to afford citizens of this State greater protection against unreasonable searches and seizures than may be required by the Supreme Court's prevailing interpretation of the Fourth Amendment." *State v. Bruzzese,* 94 *N.J.* 210, 216, 463 A.2d 320 (1983) (citing *State v. Hunt,* 91 *N.J.* 338, 344–46, 450 A.2d 952 (1982); *State v. Alston,* 88 *N.J.* 211, 225, 440 A.2d 1311 (1981); *State v. Johnson,* 68 *N.J.* 349, 353, 346 A.2d 66 (1975)), *cert. denied,* 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984). *See also State v. Dangerfield,* 171 *N.J.* 446, 461, 795 A.2d 250 (2002) (quoting *Bruzzese, supra,* and citing cases).

order an occupant of a vehicle to exit the vehicle and the authority to open the door as part of issuing that lawful order. Plain logic demands that the principles that govern whether a passenger of a vehicle lawfully can be ordered out of the vehicle must apply with equal force to whether a police officer is entitled, as a corollary and reasonable safety measure, to open the door as part of issuing a proper order to exit. *See State v. Matthews,* 330 *N.J.Super.* 1, 6, 748 *A.*2d 1125 (App.Div.2000) (holding that "[s]ince the officer was entitled to order defendant out of the car, he was equally entitled to open the door to accomplish that object"); *State v. Conquest,* 243 *N.J.Super.* 528, 533, 580 *A.*2d 740 (App.Div.1990) (combining authority to order passenger from vehicle with authority to open door, holding that "both the order to exit and the method of effectuating it [opening door] were proper"). We therefore turn to the application of that rule to this case.

### B.

■■■ In responding to a radio call at 4:25 a.m. on a weekday morning, the police officers were informed that there was "a man with a gun wearing a black coat and a black mask" located at a specific intersection. Arriving there, the officers observed a double-parked van containing five occupants, as well as another six young men milling about the van. Because the van was double-parked in violation of the traffic code, the officers possessed sufficient reasonable suspicion to detain the van.[5] Additionally, the number of people present on the street at approximately 4:30

---

[5] Both the trial court and the Appellate Division determined that the traffic stop of the van was lawful. Defendant did not seek certification on that issue. Therefore, the propriety of that traffic stop, as a condition precedent to any further police action, is not at issue in this appeal. In like manner, we reject as immaterial the Appellate Division's concern as to the relevance of whether a traffic summons was issued: "[t]hat [the police officer] did not prove a motor vehicle violation at the motion to suppress does not negate a good faith stop based upon an articulable and reasonable suspicion that a motor vehicle violation occurred." *State v. Halsey,* 340 *N.J.Super.* 492, 498–99, 774 *A.*2d 693 (App.Div.2001).

a.m., coupled with the reason for the police presence—the call of "a man with a gun"—and the furtive acts of the van's occupants that were partially obscured to, but nonetheless observed by, the police sufficed in the aggregate as the necessary "facts in the totality of the circumstances that would create in a police officer a heightened awareness of danger that would warrant an objectively reasonable officer in securing the scene in a more effective manner by ordering the passenger to alight from the car." *Smith, supra,* 134 *N.J.* at 618, 637 *A.2d* 158.

Particularly in this factual context, we too acknowledge that "traffic stops may be dangerous encounters" and that "the fact that there is more than one occupant of the vehicle increases the possible sources of harm to the officer." *Maryland v. Wilson,* 519 *U.S.* 408, 413, 117 *S.Ct.* 882, 885, 137 *L.Ed.2d* 41, 47 (1997). "Indeed, it appears 'that a significant percentage of murders of police officers occurs when the officers are making traffic stops.'" *Mimms, supra,* 434 *U.S.* at 110, 98 *S.Ct.* at 333, 54 *L.Ed.2d* at 337 (quoting *United States v. Robinson,* 414 *U.S.* 218, 234 n. 5, 94 *S.Ct.* 467, 476 n. 5, 38 *L.Ed.2d* 427, 439 n. 5 (1973)). *See also State v. Pierce,* 136 *N.J.* 184, 221–22, 642 *A.2d* 947 (1994) (Handler, J., concurring) (stating that "'[e]very arrest must be presumed to present a risk of danger to the arresting officer [and t]here is no way for an officer to predict how a particular subject will react to arrest or the degree of the potential danger'" (quoting *Bruzzese, supra,* 94 *N.J.* at 231, 463 *A.2d* 320)). Thus, even setting aside the early morning hour of these events, the unexpected number of persons present on the street and in the van, the furtive, obscured acts of those in the van, and the inherently dangerous nature of the call to which the police responded, "we know from bitter experience that any arrest, regardless of the nature of the offense must be presumed to present a risk of danger to an officer[,]" *Bruzzese, supra,* 94 *N.J.* at 233, 463 *A.2d* 320, and that "[t]he safety concerns of a police officer unquestionably merit grave consideration." *Smith, supra,* 134 *N.J.* at 615, 637 *A.2d* 158. In that same vein, we acknowledge that police officers "are called on, in certain instances, to stop motor vehicles and search passengers

without probable cause[.]" *In re Vey,* 135 *N.J.* 306, 308, 639 *A.*2d 718 (1994) (citing *State v. Muhammed,* 134 *N.J.* 599, 637 *A.*2d 158 (1994)). Those considerations reflect the acknowledgement that dual goals must be pursued: basic constitutional rights are to be safeguarded, and the lives and safety of police officers making a traffic stop should not be compromised.

The conclusion that Off. Szymanski's instruction to defendant to alight from the van was lawful under *Smith* is entirely consistent with our established jurisprudence. For example, in *State v. Tucker,* 136 *N.J.* 158, 167, 642 *A.*2d 401 (1994), we reaffirmed that "a police officer could order a passenger out of an automobile if the officer had an articulable suspicion short of probable cause to believe that a crime had been committed" (citing *Smith, supra* ). *See also State v. Diloreto,* 180 *N.J.* 264, 276, 850 *A.*2d 1226 (2004) (explaining that "[o]ur federal and State constitutions also permit warrantless conduct when the police perceive a risk to their safety" and, " '[i]n some cases the facts that permit the officer to order the passenger to alight [his or her car], with nothing more, may justify both the order to get out of the vehicle and the pat-down' " (quoting *Smith, supra,* 134 *N.J.* at 620, 637 *A.*2d 158)).

We therefore hold that, in the aggregate, there was sufficient credible evidence presented in the suppression hearing to conclude that the "facts in the totality of the circumstances ... create[d] in a police officer a heightened awareness of danger that ... warrant[ed] an objectively reasonable officer in securing the scene in a more effective manner by ordering the passenger to alight from the car." *Smith, supra,* 134 *N.J.* at 618, 637 *A.*2d 158. Those facts likewise justified the objectively reasonable belief that, as a precautionary measure, the door to the vehicle needed to be opened by the police. In those circumstances, both opening the door and ordering the passengers out of the vehicle were proper and lawful.

Further, once defendant was properly removed from the van, the seizure of the loaded gun from the floor of the van was proper under the "plain view" doctrine. *See State v. Bogan,* 200

*N.J.* 61, 79 n. 10, 975 *A.*2d 377 (2009) (describing elements of the plain view doctrine); *State v. Frankel,* 179 *N.J.* 586, 610, 847 *A.*2d 561 (2004) (explaining that police "officer could not ignore the evidence of [illegal] activity that he observed in plain view"). The plain view discovery of the firearm provided sufficient probable cause to arrest defendant, that is, that there was probable cause to believe that a crime had been committed and that defendant had committed that crime. *State v. Chippero,* 201 *N.J.* 14, 28, 987 *A.*2d 555 (2009) (citing *Schneider v. Simonini,* 163 *N.J.* 336, 363, 749 *A.*2d 336 (2000)). After defendant was arrested, the seizure of the loaded ammunition magazine and gun holster for that weapon seized from defendant as a result of a search incident to a lawful arrest also was proper. *See State v. Pena–Flores,* 198 *N.J.* 6, 19, 965 *A.*2d 114 (2009) (describing search incident to arrest exception to warrant requirement). In sum, each of the challenged searches and seizures were lawful.

## IV.

The judgment of the Appellate Division is reversed, and the trial court's judgment of conviction and sentence are reinstated.

*For reversal and reinstatement*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—6.

*Opposed*—None.